Stella ADKINS, Plaintiff-Appellant,

v.

Caspar WEINBERGER, Secretary of Health, Education, and Welfare, Defendant-Appellee.

No. 75–1754.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1975.

Decided May 25, 1976.

Ronald W. May, Pikeville, Ky., for plaintiff-appellant.

Eugene E. Siler, Jr., U. S. Atty., Ernie L. Woods, Lexington, Ky., for defendant-appellee.

Before WEICK, EDWARDS and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This appeal from summary judgment in favor of the Secretary of Health, Education, and Welfare in a federal Black Lung benefits case presents the question whether the findings of the Secretary are supported by substantial evidence in the record of the administrative proceedings. We hold that they are and affirm the judgment.

On July 1, 1970, appellant, the deceased coal miner's widow, filed an application for benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 901 et seq. The application was in proper form, and recited that Russell Leo Adkins, who had been employed for 28 years by an underground coal operator, and worked until the time of his death, "died of a heart attack" at age 51 on June 17, 1967.

After an administrative determination on January 5, 1971, denying her claim because the miner's death was not "due to pneumoconiosis," and after its subsequent denial upon reconsideration on May 25, 1971, a hearing was conducted before a hearing examiner on February 6, 1972. His decision, issued March 28, 1972, denied the claim, finding that the cause of death was an acute coronary thrombosis, that the miner did not have pneumoconiosis or other chronic respirable disease, and that his death "was not due to pneumoconiosis or other respirable disease." Appellant requested review of this decision.

On May 19, 1972, the Federal Coal Mine Health and Safety Act of 1969 was amended, and, pursuant to its mandate, appellant's claim was reconsidered administratively and was again denied on May 2, 1973. On the latter date, Mrs. Adkins was advised that her claim had been reexamined under the provisions of the amendments, and that she was not eligible for benefits because her husband's death was due to a heart attack, and that he did not have pneumoconiosis or a disabling lung condition that met the requirements of the law. This denial was reexamined in September 1973, and the determination remained unchanged. Since her claim was still pending before the Bureau of Hearings and Appeals, it was referred by the Appeals Council for hearing before an administrative law judge on April 29, 1974.

The administrative law judge reviewed all the evidence presented to the hearing examiner in 1972 and considered additional proofs. This included testimony by the claimant and by her son who also represented her as counsel. The administrative law judge found that the miner was not "totally disabled" at the time of his death, and that he was then engaged in mining on a regular full-time basis. He also found that the miner's death was not due to pneumoconiosis, and that his death was the direct result of an acute coronary thrombosis. He therefore denied the claim for widow's benefits on June 7, 1974.

On September 20, 1974, the Appeals Council, upon review of the administrative law judge's decision, concluded that it was

correct. The Council's decision became the final decision of the Secretary.

On October 21, 1974, appellant commenced this action in district court to review the decision of the Secretary. The case was submitted on cross-motions for summary judgment, and the district court, after considering the entire administrative record, concluded that the Secretary's decision was supported by substantial evidence. He thereupon entered judgment for the Secretary, and this appeal followed.

As appellant recites in her brief, the Secretary has conceded that she is the widow of a deceased coal miner who worked in underground coal mining employment for more than 15 years. It is undisputed that she met the definition of "widow" under 30 U.S.C. § 902(e) in that she was dependent upon the deceased miner with whom she lived at the time of his death, and that she has not remarried. The only dispute is whether there is substantial evidence to support the Secretary's determination that the miner was not suffering from a "totally disabling respiratory or pulmonary impairment" at the time of his death. 30 U.S.C. § 921(c)(4). Neither party sought a remand to reopen the administrative record to present additional testimony when the cross-motions for summary judgment were filed in district court.

The evidence in the administrative record consisted of the following items. The claimant testified that when she and her husband returned from a picnic on June 17, 1967, he began to cut the grass with a power lawnmower, and after a trip "down through the yard" and back, he fell to the ground and died. Dr. T. M. Perry, the family physician, prepared a death certificate on which he certified that death was caused by "acute coronary thrombosis." He left blank the spaces provided for "conditions, if any, which gave rise to above causes . . ." and "other significant conditions contributing to death but not related to the terminal disease condition given. . . ." This document was signed June 20, 1967.

Mrs. Adkins testified at the first hearing that her husband was not sick before he died. She testified that she believed his death was due to pneumoconiosis because she worked in a hospital kitchen "close to the emergency," and she had never seen a person who died of a heart attack who looked like her husband who "turned real red and then blue" when he died. She also testified that her husband had a cough for years and that "he would lose his breath, he would have to get out of the bed, he would take such coughing spells."

Neighbors and co-workers stated in affidavits employing substantially identical language and presented at the second hearing that the deceased had a "serious breathing difficulty" and that he worked in a mine where he was exposed to air that was heavily contaminated with coal dust. Claimant's son and counsel also testified that his father had difficulty in breathing and complained of coughing several weeks prior to his death.

Dr. Perry, who signed the death certificate, submitted at the first hearing an undated statement on which he wrote:

I treated the above [deceased] for coronary insufficiency for 2 or 3 years. He also had some anginal attacks at intervals. Pronounced him dead in his back yard where he was using a hand operated lawn mower. Never treated for pulmonary condition.
T. M. Perry, M.D.
Jenkins, Kentucky

Another handwritten statement of Dr. Perry was also submitted. It was dated December 20, 1971, and stated:

This is to certify that I treated the above captioned [decedent] for shortness of breath and resp. difficulty on several occasions before his death. Also for coronary insufficiency. He was referred to hospital on 2 occasions for ECG's and suppose had x-rays of lungs and heart. I have referred report on the consultations as to pulmonary findings.
T. M. Perry, M.D.

Also, in an undated typewritten statement to Russell Adkins, Jr., claimant's son

and attorney in the administrative proceedings, Dr. Perry wrote:

To Russell Adkins, Jr.—I am enclosing the letters I have in my files on Russell Leo Adkins. These will be of little help. However, I had referred Leo to Appalachian Regional Hospital for E.C.G. on one occasion [sic] and for lumbar spine x-ray (enclosed). On this occassion [sic], I am sure they have pictures of chest in making pictures of spine. Will try to find out if they will go through their files to see if they have films of lung fields. My diagnosis at death was just an educated guess as I had seen him on two or three occassions [sic] for precardial chest pain, shortness of breath, etc., which diagnosed as coronary insufficiency and angina. So you see the reason for diagnosis on death certificate.

Very sincerely,
T. M. Perry, M.D.

At the second hearing, the claimant testified that Dr. Perry had told her that he might have confused her husband with another employee with the same name.

There was also submitted a letter dated August 2, 1973, from a Dr. James A. Kaufmann of Atlanta, Georgia, who had never seen the decedent but stated the following opinion based upon a hypothesis:

Assuming that a person worked in an underground coal mine heavily laden with coal dust and particles in the air for a period of 18 years and was treated for shortness of breath and respiratory difficulties on several occasions by his family physician, and assuming that this person was noted by several of his neighbors and fellow employees to have breathing difficulty that remained with him until the time of his death with prolonged periods of coughing, and assuming that this person had no other reported form of lung disease or respiratory difficulty such as asthma, etc., it would be my medical opinion that this person was most likely suffering from the respiratory disease known as pneumoconiosis.

Although reference was made by Dr. Perry and Mrs. Adkins to chest x-rays, neither claimant nor the Secretary was able to find any x-rays or any record of x-ray findings.

We recently examined the section of the Black Lung Benefit Act under which appellant seeks benefits in *Ansel v. Weinberger*, 529 F.2d 304 (6th Cir. 1976). In that case the coal miner himself sought benefits under the Act. Ansel sought to establish his entitlement to benefits by reliance upon 30 U.S.C. § 921(c)(4)[1] which recites circumstances that create a rebuttable presumption of total disability due to pneumoconiosis. Ansel invoked § 921(c)(4) because he was unable to establish the existence of pneumoconiosis by a chest x-ray or biopsy under 20 C.F.R. § 410.428. We directed the entry of benefits after we determined that there was no substantial basis for the Secretary's conclusion (1) that Ansel suffered from cerebral arteriosclerosis and arteriosclerotic heart disease, or (2) that Ansel did not establish that he was totally disabled from a respiratory or pulmonary impair-

1. 30 U.S.C. § 921(c)(4) provides:
(c) For purposes of this section—
(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

ment. We pointed out that: "Once Claude Ansel produced evidence which entitled him to the presumption of section 921(c)(4), that presumption could be rebutted only by establishing that he did not have pneumoconiosis. . . ."

As in *Ansel*, since Mrs. Adkins did not establish the existence of pneumoconiosis by a chest x-ray or biopsy as provided in 20 C.F.R. §§ 410.414(a), 410.428, she also relied upon § 410.414(b) in order to establish a rebuttable presumption of total disability and death due to pneumoconiosis. However, the Secretary found that she did not establish the facts necessary to make this presumption operative.

 In order to be entitled to the benefit of the rebuttable presumption, a claimant must show that a miner had a "totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 921(c)(4). Although lay witnesses suggested that the deceased miner had substantial breathing difficulty and that he coughed often, the medical statements submitted by the miner's family physician negative the existence of a totally disabling chronic respiratory or pulmonary impairment. The physician's determination on the death certificate was that the miner died of an acute coronary thrombosis. Although Dr. Perry treated the miner for shortness of breath and respiratory difficulty, his diagnosis at death was of coronary insufficiency and angina. In addition, there is other evidence in the record that the miner was not "totally disabled" within the meaning of the Act. 30 U.S.C. § 902(f). He was sufficiently active to engage in mining on a "regular full-time basis." We recognized in *Farmer v. Weinberger*, 519 F.2d 627 (6th Cir. 1975), that a coal miner's regularity of work and his proper performance of it could properly be considered as evidence supporting a denial of benefits. In this case it was also shown that on the day of the miner's death, he attended a picnic and later began to mow the grass in his yard. Upon this record, the Secretary's finding that appellant did not establish the existence of a "totally disabling chronic respiratory or pulmonary impairment" that

would entitle her to the application of the rebuttable presumption that her husband was totally disabled and died from pneumoconiosis has substantial support.

Appellant also claims that under 20 C.F.R. § 410.462(b) she is entitled to an award of benefits. That section provides in pertinent part:

> Where the evidence establishes that a deceased miner suffered from pneumoconiosis or a respirable disease and death may have been due to multiple causes, death will be found due to pneumoconiosis if it is not medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death.

As we have indicated above, there is substantial evidence in the record to support the Secretary's findings that the deceased miner did not suffer from pneumoconiosis or a respirable disease, and that his death was the direct result of an acute coronary thrombosis. Although the record would have supported a conclusion allowing the claim for benefits, the Congress has not authorized us to substitute our judgment for that of the Secretary when the evidence is susceptible to contrary interpretation.

Accordingly, the judgment of the district court is AFFIRMED.