Delno MINIARD, Petitioner-Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant-Appellee.

No. 77–1688.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 29, 1979.

Decided March 10, 1980.

Rehearing Denied May 12, 1980.

Alva A. Hollon, Jr., Hollon, Hollon & Hollon, Hazard, Ky., for petitioner-appellant.

Patrick H. Molloy, U. S. Atty., William M. Brown, Lexington, Ky., for defendant-appellee.

Before EDWARDS, Chief Judge, and KEITH and KENNEDY, Circuit Judges.

KEITH, Circuit Judge.

Appellant Delno Miniard appeals from an order of a District Judge in the United States District Court for the Eastern District of Kentucky affirming the denial of Black Lung benefits by the Secretary of Health, Education and Welfare. We reverse and remand for payment of benefits.

This case arises under Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. Section 901, *et seq.* Part B establishes a program for the payment of benefits by the Federal Government to coal miners or their survivors who meet the eligibility requirements of the Act and regulations promulgated there., under. Under the Act, a person who has worked in underground coal mines for stated periods of time and is totally disabled because of pneumoconiosis is entitled to receive federal benefits. The statutory definition of pneumoconiosis is "a chronic dust disease of the lung, and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

To be eligible for payment of benefits, a living miner must demonstrate that he is totally disabled due to pneumoconiosis arising out of employment in one or more of the nation's coal mines. 20 C.F.R. § 410.410 (1972). To establish entitlement to benefits on the basis of total disability due to pneumoconiosis, a claimant must submit the evidence necessary to establish: 1) that he is a coal miner; 2) that he is totally disabled due to pneumoconiosis; and 3) that his pneumoconiosis arose out of employment in the nation's coal mines.

Plaintiff-appellant Delno Miniard filed an application for Black Lung benefits on March 6, 1970, which was denied initially by the Bureau of Disability Insurance of the Social Security Administration on the basis of a negative x-ray interpretation. The 1969 Act was amended in 1972 by the Black Lung Benefits Act,[1] and Miniard's claim was re-evaluated in light of these amendments, and again denied, on April 23, 1973. This denial was premised on a finding that the claimant did not suffer from complicated coal worker's pneumoconiosis, and that he was "still actively employed" at the time that his claim was reconsidered.

Miniard then requested a hearing before an administrative law judge, who issued a decision on September 10, 1974 in which appellant was again denied benefits. The administrative law judge found that the fact that Miniard continued to work in the mines for approximately three years after first filing his claim for benefits under the Act tended "to rebut a finding of total disability", in the absence of complicated pneumoconiosis. His case was further weakened before the administrative law judge "by the fact that he stopped working, after his claim was adjudicated, because he was told to when medical reports showing pneumoconiosis were favorable to his case. That reason is quite different than the statutory requirement for granting benefits—particularly under the facts and circumstances here present." The administrative law judge concluded that:

1. Black Lung Benefits Act of 1972. P.L. 92–303. Approved May 19, 1972.

"[t]hus even accepting the claimant's medical proof of simple pneumoconiosis, it cannot here be concluded that it results in a significant amount of dysfunction in the miner to warrant a finding of total disability, as that term is defined in the Act."

On September 15, 1975, the Appeals Council, affirmed the denial of benefits by the administrative law judge, which became the Secretary's final decision in this case.

The claimant then sought review of the Secretary's final decision in the United States District Court for the Eastern District of Kentucky. The case was referred to a United States Magistrate, whose report and recommendation was that the Secretary's decision should be affirmed. In an order entered August 10, 1977, the District Court affirmed the Secretary's denial of benefits. From that order, claimant appeals.

### I.

Appellant Miniard is a 77 year old ex-coal miner with an eighth grade education, who worked in the coal mines for "about twenty-eight years," last working on June 8, 1973.[2] At the hearing before the administrative law judge, appellant testified to having quit his employment in the mines "on account of my [his] disability." He testified that he had thought about quitting in 1972, a year earlier than he did in fact quit, because he "just wasn't able to work," and "didn't feel like working." He stated that he found it hard to work as a result of his respiratory problems—he was weak, he could not "hold out" all day, or do a good day's work because of the need to sit down and rest. Miniard testified that although he was not physically able to do his job properly during the last part of his employment, he forced himself to continue working because he needed the work as a means of support. He stated further that he had had the feeling of being weak and tired,

and had been coughing up mucus, experiencing shortness of breath, and smothering at night, for the past five or six years.[3] In addition he testified that his lawyer had received a report from a doctor who had examined Miniard indicating that he had silicosis and "different things wrong with my [his] chest", with the suggestion that he terminate employment.

The medical evidence submitted by appellant in support of his claim for benefits, and upon which the administrative law judge relied in making his determinations, consisted of seven inconclusive readings of three chest x-rays, and one general report by an examining physician. The first chest x-ray was taken on February 24, 1971 and was read as negative for pneumoconiosis by Dr. William H. Anderson, a Board certified internist with a subspecialty in pulmonary diseases. This reading was confirmed by Dr. L. J. Bristol, a Diplomate of Radiology, who reread the x-ray, and found no evidence of pneumoconiosis.

Additionally, both parties referred to a second chest x-ray of May 19, 1972, read by Dr. W. K. C. Morgan, an internist with some specialty practice in occupational medicine and pulmonary diseases, who indicated that although the reading was negative for pneumoconiosis, the x-ray revealed fibrotic strains on discs of atelectasis of the left costophrenic angle. The administrative law judge did not cite this report among the evidence evaluated.

The most disputed chest x-ray was taken on May 26, 1973, by Dr. J. Roy Biggs, a Board certified radiologist, who found pneumoconiosis category 1/0 ps. This film was reread by Dr. H. W. Reckmann, another radiologist, who found pneumoconiosis category 2p. Dr. L. J. Bristol also read this x-ray, interpreting it as negative for pneumoconiosis, but finding indications of an enlarged heart abnormality.

Dr. Robert B. Matheny, a general practitioner, personally examined the claimant on

---

**2.** Miniard was born August 12, 1903.

**3.** The latter part of Miniard's employment in the coal mines was spent as an underground track foreman, which involved sustained breathing of dust particles daily.

May 26, 1973, for complaints of shortness of breath, coughing, and chest pains on the left side. Miniard complained of dyspneic feelings after walking one block on level ground or up an incline, as well as of having experienced a productive cough and chest pains for several years. Physical examination found inspiratory squeaks, bronchial breathing sounds, two plus edema, and elevated blood pressure. Dr. Matheny also noted arrhythmia. A chest x-ray film revealed hilar calcifications and increased nodularity in both lung fields. Dr. Matheny's final diagnoses were: 1) pneumoconiosis, category 1/0 ps; 2)ʳ chronic bronchitis; 3)chronic obstructive airway disease; 4) hypertension; 5) arrhythmia; 6) cardiomegaly and 7) osteosclerosis.

## II.

As Judge Lively noted in *Ansel v. Weinberger*, 529 F.2d 304, 306 (6th Cir. 1976), the Black Lung Benefits Act of 1972, which amended the 1969 Act, was designed to:

"Relax the often insurmountable burden of proving eligibility by prohibiting a denial of claims based solely on a negative chest roentgenogram and by presuming *that miners with 15 years experience who are disabled by a respiratory or pulmonary impairment are disabled by pneumoconiosis.* Senate Report No. 92–743 (1972) 92 Cong., 2nd Sess., 2 U.S.Cong. & Admin.News 1972 at 2306."

(emphasis added)

The 1972 amendments accomplished this goal by creating a series of statutory presumptions for determining the existence of pneumoconiosis, in addition to providing for a more liberal construction of the disability requirement. 30 U.S.C. § 902(f)(1) provides that:

"The term 'total disability' has the meaning given it by regulations of the Secretary of Health, Education, and Welfare,

. . . except that . . . in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time . . . .

*[S]uch regulations shall provide that . . . in the case of a living miner, if there are changed circumstances of employment indicative of reduced ability to perform his or her usual coal mine work, such miner's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled . . . . .*

*Such regulations shall not provide more restrictive criteria than those applicable under Section 223(d) of the Social Security Act [42 USC § 423(d)]."*

(emphasis added)

20 C.F.R. § 410.412(a) adds to the elements contained in the above definition the requirement that the miner's impairment be expected to result in death, or that the impairment has lasted and can be expected to last for a continuous period of not less than 12 months.

Of the statutory presumptions provided in the Act, the presumption most applicable to the facts of this case is the rebuttable presumption set out in 30 U.S.C. § 921(c)(4). That presumption provides that:

If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's . . . claim under this title, and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection,[4] and if other evi-

4. § 921(c)(3) provides:

If a miner is suffering or suffered from a chronic dust disease of the lung (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in

dence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such a miner is totally disabled due to pneumoconiosis . . . . . The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

The Secretary's contention that Miniard has not met the statutory requirements to trigger the operation of the rebuttable presumption standards seems to be based on a finding of general insufficiency as to the amount of evidence presented by Miniard, as well as the inconclusiveness of that evidence which was submitted. Secondly, the Secretary argues that although Miniard did prove that he had been employed in the coal mines for over 15 years, he failed to establish that he suffered from a "totally disabling chronic respiratory or pulmonary impairment," as evidenced by the lack of a specific statement to that effect by his treating physician, as well as by Miniard's continued employment in the coal mines for three years after he first filed for disability benefits.

■ We believe that in this case the Secretary's analysis as to how the rebuttable presumption is established under § 921(c)(4) is erroneous. Miniard has made the requisite showing of his employment in the underground coal mines for 15 years or more. He has also presented sufficient evidence of chronic respiratory or pulmonary impairment to be considered totally disabled within the meaning of the statute, notwithstanding his continued employment. Although Miniard's employment during the disputed three year period was "gainful," in the sense that he received remuneration for his services as the administrative law judge found, Miniard's own testimony that he was unable to "hold out" long enough to "keep up" with his co-workers, and that he was unable to perform his duties in the manner in which they should be performed and as he had performed them in the past, is indicative of the progressively debilitating nature of the constellation of impairments known as "black lung disease."

It is not fatal to Miniard's claim, as the administrative law judge apparently thought, that he continued to labor in the face of his debilitating impairments, under increasing physical hardship and decreasing work capacity, in order to financially support himself and his wife. Nor should it be. Human beings are frequently able to endure, through sheer willpower and necessity, when the disability is one of gradual debilitation, rather than a sharp high-impact blow to some part of the body. Moreover, the statute itself contemplates such a situation in § 902(f)(1)(B)(ii): "in the case of a living miner, if there are changed circumstances of employment indicative of reduced ability to perform his or her usual coal mine work, such miner's employment in a mine shall not be used as conclusive evidence that the miner is not totally disabled."

■ Miniard's own testimony of disability, when linked with the medical evidence submitted in support of his claim, is sufficient to trigger the operation of the presumption contained in § 921(c)(4). Once the miner has come within the presumption, it can be rebutted only on a showing that the miner does not have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. The Secretary may not rebut the presumption created by § 921(c)(4) solely on the ground of negative x-ray evidence. 30 U.S.C. § 923(b); 20 C.F.R. § 410.414(4)(c). See also *Ansel v. Weinberger*, 529 F.2d 304 (6th Cir. 1976). In determining the validity of a claim for benefits under the Act, the Secretary is

clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be.

required to consider all relevant evidence, including blood gas studies, x-ray interpretations, biopsy, autopsy, electrocardiograms, pulmonary function studies, physical performance tests, medical histories, and other supportive materials. 30 U.S.C. § 923(b). The regulations require a consideration of other factors as well in determining a claimant's total disability, including his or her age, education, and work experience criteria. When all of the evidence is considered, it appears to us that the Secretary's conclusions are not supported by substantial evidence.

### III.

We note that appellant Miniard's claim, having been filed before July 1, 1973, is to be adjudicated under the interim rules found in 20 C.F.R. § 410.490. Those rules provide an interim presumption of disability due to pneumoconiosis if: (1) a chest x-ray establishes the existence of pneumoconiosis, and such impairment can be shown to have arisen out of coal mine employment, or (2) in the case of a miner who has worked for at least 15 years in the underground coal mines, ventilatory studies establish the presence of a chronic respiratory or pulmonary disease which meets certain medical requirements. The presumption of total disability due to pneumoconiosis may be rebutted only if there is evidence that the individual is in fact doing his usual coal mine work or comparable and gainful work, or where other evidence establishes that he is able to do such work. Under this standard, Miniard's presumption is established by the positive x-ray readings for pneumoconiosis by Drs. Biggs, Reckmann, and Matheny, and is not rebutted by Miniard's continued employment. As we indicated above, we are not persuaded that his work performance was "comparable" to his usual coal mine work performance.

### IV.

And finally, we note that the Act is remedial in nature and should be given a liberal construction. In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors. *Morris v. Mathews,* 557 F.2d 563 (6th Cir. 1977). In *Morris, supra,* this Court quoted extensively from the legislative history contained in S.Rep. No. 97–743, 92d Cong., 2d Sess. (1972); 1972 U.S.Code Cong. & Admin. News, pp. 2305–07, 2312–15. Notable among that extensive documentation of the difficulties in substantiating black lung claims was Senator Robert C. Byrd's testimony before the Subcommittee on Labor of the pending black lung benefits legislation. He said:

> "Let us stop quibbling with dying men as to whether their lungs are riddled with black lung or whether they are affected with asthma, or silicosis, or chronic bronchitis."

The main purpose of the Act "is to compensate miners, and the widows and children of miners, whose lives and health have been sacrificed in the production of that critical energy source—coal." *Morris, supra,* 557 F.2d 563, 566 (6th Cir. 1977), citing S.Rep. No. 92–743, 92d Cong., 2d Sess. (1972), U.S. Code Cong. & Admin.News, p. 2305 (hereinafter Legislative History). "Both the Department of Health, Education and Welfare and the United States Courts are obligated to follow this act so as to give realistic and not niggardly effect to the stated Congressional purposes." *Morris, supra,* at 570.

Accordingly, we are of the opinion that appellant is entitled to benefits under the Act. The opinion of the district court is reversed, and this cause is remanded to the Secretary to grant benefits.