Albert CARAWAY, Plaintiff-Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 78–3081.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 12, 1980.

Decided May 21, 1980.

Steven E. Cichon, Steven E. Cichon Co., LPA, St. Clairsville, Ohio, for plaintiff-appellant.

James C. Cissell, U. S. Atty., Joseph E. Kane, II, Asst. U. S. Atty., Columbus, Ohio, for defendant-appellee.

Before BROWN, KENNEDY and JONES, Circuit Judges.

BAILEY BROWN, Circuit Judge.

This is an appeal from the denial of black lung benefits to an ex-coal miner who worked in the mines in excess of twenty years. Appellant, Caraway, is presently seventy years old and has a second grade education. He has not worked since approximately 1958.

Caraway first filed his application in 1970 to establish benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.* His application was denied. Thereafter Caraway's claim was reexamined under the 1972 amendments to the Act, and he was notified that the Social Security Administration proposed again to deny benefits. Pursuant to Caraway's request, a hearing was held before an administrative law judge who found Caraway ineligible for benefits. The Appeals Council declined to review the hearing decision.

Caraway filed this action in the United States District Court for the Southern District of Ohio to obtain a court review of the Secretary's decision. Upon the submission of cross-motions for summary judgment, the district court remanded the case to the Secretary for further consideration of Caraway's eligibility for the rebuttable presumption of disability due to pneumoconiosis created by 30 U.S.C. § 921(c)(4). Having reviewed the record, the Appeals Council issued its remand decision holding that the rebuttable presumption was not raised and affirming the denial of benefits, and this became the final decision of the Secretary. Thereafter, the district court found that the final decision of the Secretary was supported by substantial evidence. Caraway then perfected his appeal to this court. We determine that Caraway was entitled to the rebuttable presumption, that it was not rebutted, and therefore we reverse and remand for award of benefits.

## I

At the hearing before the administrative law judge, Caraway contended that he had worked in excess of twenty years in the underground coal mines. The record shows that Caraway worked intermittently in the mines from 1927 to 1958. For a portion of this period he worked in a stone quarry which was owned by a coal company. Caraway has at least twenty years of coal mining employment.[1]

Caraway testified that he had trouble breathing and felt weak and exhausted before quitting his work in the 1950's. He stated that he must rest after walking upstairs; he smothers, gasps, coughs, brings up brown phlegm, experiences dizziness, wheezes and has chest pain. He takes medication for nerves, cough and pain. He also has difficulty sleeping due to his labored breathing. Caraway's testimony was corroborated by his wife and next door neighbor.

The medical evidence in the record consists of numerous readings of chest x-rays, three pulmonary function studies, a report from a treating physician, and the results of four physical examinations.

In January of 1973, Dr. Porterfield, the treating physician, issued a report based on several examinations of Caraway. Dr. Porterfield stated that from 1965 to 1972, Caraway had visited his office four to five times per year. The date of his last examination was December 10, 1972.

In the report the medical history indicates shortness of breath and a recurring and productive cough of seven years duration. The doctor's physical findings are "barrel type chest; diminished excursion on breathing, breath sounds decreased." With "x-rays [revealing] increased amount of pulmonary fibrosis," the doctor diagnosed pneumoconiosis and concluded that as a result thereof, "[t]his man is unable to perform useful work."

On June 5, 1973, Dr. Dickinson, a specialist in thoracic surgery and pulmonary diseases, reported on his physical examination of Caraway. Dr. Dickinson first notes that Caraway has had many injuries: "he has had his clavicle fractured, chest injury, has had right foot smashed, both knees injured, has had two spinal operations, and has had one bad burn, and had his left forearm and hand slashed with a chain saw, but has withstood all of these onslots (sic)." After chest x-rays and pulmonary capacity examination, the doctor concludes, "I feel that this man is totally disabled from his multiple problems, . . . that he definitely has pneumoconiosis, but I would not begin to estimate the degree of his total disability which is due to this."

In July of 1973 appellant was admitted to the Bellaire City Hospital because of chest pain. The initial diagnosis suggested a possible recurrent pulmonary infarction.[2] Caraway was discharged after treatment with anticoagulants. Hospital x-rays revealed a lesion in the right lower lung "which may represent linear atelectasis or chronic scarring." The day after his discharge appellant returned to the hospital. Dr. Rolston noted that breath sounds were very poor at the base of the right lung. Upon subsequent examination, it was determined that Caraway had a nonfunctioning gall bladder.

At the request of the Secretary, Dr. Rolston submitted in August, 1973, a medical report based on his hospital examinations. He stated that he had been unable to detect the source of the pulmonary emboli previously diagnosed, With regard to the respiratory and cardiovascular systems, he stated "[r]ecent examinations have been completely unremarkable."

---

1. The administrative law judge found that Caraway had "at least twenty years in coal mine employment." In his brief here, the Secretary concedes that he had "at least twenty years." Unaccountably, the Appeals Council found such employment only "for more than ten years," though its decision does not turn on this finding.

2. A pulmonary infarction is an "infiltration of an airless area of lung with blood cells, resulting from obstruction of the pulmonary artery by an embolus or thrombus." *Dorland's Medical Dictionary* 738 (24th ed. 1965).

In a report dated July 1, 1974, Dr. Oser stated that he had examined appellant in April and June of 1974. Although pulmonary function studies were near normal, the doctor found fibrotic strands and some minimal nodulations in both lungs. He noted hyperinflation consistent with some degree of emphysema and concluded:

I think this man does have coal miner's pneumoconiosis with the pulmonary functions as noted . . .

I think that this man is probably disabled from doing any heavy exertion because of the chronic obstructive process . . . he does have the emphysema.

The final medical examination was made in 1976 by Dr. Lewis, an internist. Upon physical and x-ray examination Dr. Lewis found emphysema and pneumoconiosis. Dr. Lewis further opined that the appellant was totally disabled for coal mine work on or before June 30, 1973.

The x-rays in the record are conflicting and inconclusive. One doctor read his film as positive for complicated pneumoconiosis (Dr. McMurray), another doctor found simple pneumoconiosis (Dr. Kennard), but some read the x-rays as totally negative for any pneumoconiosis whatsoever.

In addition a ventilatory test was administered in October of 1972, which resulted in an abnormal MVV (maximum ventilatory volume per minute). The doctor noted good cooperation by Caraway.

## II

Caraway contends that he is entitled to black lung benefits under Part B of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 et seq., as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 et seq. His primary argument on appeal is that he is entitled to the rebuttable presumption of 30 U.S.C. § 921(c)(4), which provides in part:

3. The requisite disability is defined in 30 U.S.C. § 902(f)(1):

"The term 'total disability' has the meaning given it by regulations of the Secretary of Health, Education, and Welfare, . . . except that in the case of a living miner, such regulations shall provide that a miner shall be considered totally disabled when pneumo-

(4) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption.

. . . The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with employment in a coal mine.

This section is implemented by 20 C.F.R. §§ 410.414(b)(1), (2), (3).

It is undisputed that Caraway has been employed for the requisite period in the mines. The x-rays submitted in connection with his claim have been read or reread as negative. Therefore "if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment" Caraway would be entitled to the presumption.[3]

Upon the remand, the Appeals Council found that the evidence did not demonstrate any significant impairment in pulmo-

coniosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time . . .

nary function.[4] The district court held that this decision was supported by substantial evidence.

In determining whether a claimant has a "totally disabling respiratory or pulmonary impairment," 30 U.S.C. § 923(b) provides:

> . . . In determining the validity of claims under this part [which part includes § 921(c)(4)], all relevant evidence shall be considered, including where relevant, medical tests such as blood gas studies, x-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant' physician, or his wife's affidavits, . . . and other supportive materials.

Reviewing such evidence, we find that the Appeals Council failed to give proper consideration to the medical reports of four examining physicians.

■ As we determined in *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977), total disability must be proved to have existed on or before June 30, 1973, otherwise recovery of benefits will not be allowed. However, relevant medical evidence which is accumulated subsequent to that date may relate back and should be considered in determining claimant's condition as of June 30, 1973. *Id.* at 1354–55.

The treating physician for seven years, Dr. Porterfield, unequivocally found total disability due to pneumoconiosis in January of 1973. Approximately five months later,

in June of 1973, Dr. Dickinson upon physical examination diagnosed pneumoconiosis and confirmed that Caraway was totally disabled from his multiple problems.

Two more doctors examined Caraway after the June 30, 1973 deadline for proving disability. Dr. Oser, after two examinations, in 1974 found pneumoconiosis and emphysema. He stated that Caraway was "probably disabled from heavy exertion because of the chronic obstructive process . . . ." Dr. Lewis examined Caraway in 1976, finding total disability caused by emphysema and pneumoconiosis. He also gave his opinion that Caraway was permanently and totally disabled prior to June 30, 1973.

Upon the remand for a determination whether Caraway was entitled to a rebuttable presumption, the Appeals Council simply discredited the physical examinations and relied instead on the negative x-rays in the record.

■ We are of the opinion that Caraway was entitled to the rebuttable presumption. Caraway, his wife and his neighbor each gave testimony which would support a finding of a totally disabling lung disease. Caraway's personal physician unequivocally found total disability due to chronic lung disease, and this finding was supported by three additional physicians, each of whom has examined appellant in person. (Because pneumoconiosis is a progressive disease, we believe that the reports of Drs. Oser and Lewis are at least some evidence of Caraway's condition as of June 30, 1973.

---

4. The Appeals Council therefore, concludes that the evidence of record does not demonstrate any significant impairment in pulmonary function during the period at issue. In arriving at this conclusion, the Council has drawn no specific inferences of non-disability solely from the negative X-rays and ventilatory studies of record and has also considered whether any of the evidence post-dating June 30, 1973 may be related back to establish total disability as of that date. However, as heretofore detailed, the Council finds that for the period at issue the opinions of those physicians who concluded that the claimant is totally disabled due to pulmonary disease are not supported by the remainder of the record, including the majority of reported clinical findings, the X-ray interpre-

tations, the complete pulmonary function tests or the other medial findings of record, nearly all of which have been negative for significant respiratory disease. The evidence, in fact, strongly suggests that the claimant's disability is principally orthopedic and psychiatric in nature (Exhibits 8, 15, 36 and 40). Accordingly, the Appeals Council finds that the rebuttable presumption of total disability due to pneumoconiosis under 30 U.S.C. 921(c)(4) of the Act and 20 CFR 410.414(b) and (c) and 410.426(d) of the regulations is not raised by the evidence in this case. The Council, therefore, concludes that the claimant does not meet any of the criteria of the Act and regulations for entitlement.

*See Begley, supra,* 544 F.2d at 1354.) In conclusion we find that appellant has made out a prima facie case sufficient to raise the § 921(c)(4) presumption. *See Morris v. Mathews,* 557 F.2d 563 (6th Cir. 1977) (Presumption invoked by testimony of three examining physicians, plaintiff, and several co-workers); *Ansel v. Weinberger,* 529 F.2d 304 (6th Cir. 1976) (Presumption invoked by plaintiff's physician's testimony, coupled with the lay testimony of plaintiff wife, and co-worker; *see also Prokes v. Mathews,* 559 F.2d 1057 (6th Cir. 1977).

In accordance with § 921(c)(4), the Secretary may rebut this presumption only by establishing (1) that Caraway does not have pneumoconiosis, or (2) that the respiratory impairment did not arise out of coal mine employment. The Secretary, however, cannot rebut the presumption by negative x-ray readings or by negative pulmonary function tests. *Ansel v. Weinberger, supra,* 529 F.2d at 310. Thus, the Secretary, to rebut the presumption, must rely on the report of Dr. Rolston who attended Caraway while in the hospital in 1973. At the hospital Dr. Rolston diagnosed a pulmonary embolus in the right lung. He noted that breath sounds were poor in the right lung. In response to the Secretary's request, Dr. Rolston issued a report based on his examinations and treatment of Caraway. Although he states at one point that "recent examinations have been completely unremarkable," his own record on Caraway states "breath sounds are very poor at the right base." Neither Dr. Rolston nor any other physician said that Caraway did not have pneumoconiosis. Therefore, neither Dr. Rolston's report nor the other evidence rebuts the presumption.

The judgment of the District Court is vacated and the case is remanded to the District Court for remand to the Secretary of Health, Education and Welfare for payment of benefits.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

Because I am of the opinion that the District Judge correctly held that the administrative record contains substantial evidence to support the Appeals Council's holding that appellant is ineligible for Black Lung Benefits, I dissent. As the majority notes, since appellant cannot meet the x-ray or ventilatory study standards, he must rely on the rebuttable presumption provision, 30 U.S.C. § 921(c)(4). The threshold requirements for this section are that he be employed 15 years or more in the mines (which appellant meets) and evidence (other than x-ray) which "demonstrates the existence of a totally disabling respiratory or pulmonary impairment." The Appeals Council specifically found that the evidence "does not demonstrate a significantly impaired lung function as a result of chronic respiratory or pulmonary disease" or "totally disabling chronic respiratory pulmonary impairment." The majority opinion describes at length portions of the record which could support the opposite conclusion. However, the record also contains other substantial evidence which supports the Administrative Law Judge and the Appeals Council. For example, in July 1973, very close to the June 30, 1973 cutoff date, when appellant was hospitalized for multiple pulmonary emboli, the treating physician, Dr. Rolston, reported that no clinical findings relating to the emboli could be detected and that appellant's physical examination remained essentially normal. (Exhibits 36, 40 and 43). The record of the examination at the hospital on July 23, 1973 (Exhibit 36) contains the following:

"CHEST: The respirations are unlabored.

"LUNGS: Are clear. I hear no rales, rubs nor rhonchi, no wheezes."

Further, the record does not disclose any complication from the emboli which cleared rapidly. Dr. Rolston's report of August 28, 1973 (Exhibit 43) states that there was no evidence of symptoms of pulmonary emphysema and recent examinations were described as completely unremarkable. No pulmonary findings relative to the pulmonary emboli could be detected clinically. Dr. Rolston's reports provide substantial evidence for the Appeals Council's conclusion that there was no significant impairment of pul-

monary function before June 30, 1973. That we may have reached a different conclusion on the same evidence is not controlling. The decision of the Appeals Council must be upheld if supported by substantial evidence. *Adkins v. Weinberger*, 536 F.2d 113, 117 (6th Cir. 1976).

The Appeals Council did not, as the majority states, "discredi[t] the physical examinations and rel[y] instead on the negative x-rays in the record." Rather, it relied, as it was entitled to, on Dr. Rolston's reports and the hospital reports of July and August, 1973. Dr. Rolston's statement that appellant's "breath sounds are very poor at the right base" quoted in the majority opinion is not inconsistent with his other reports. The statement quoted by the majority is preceded by the sentence "LUNGS: Are entirely clear." (Exhibit 40). Appellant was then in the acute stage of his pulmonary infarct. Indeed, the diagnosis of appellant's condition at that time was "Recent pulmonary embolus." In accepting the July-August reports of appellant's treating internist, Dr. Rolston, and rejecting reports from doctors who saw appellant later, the Appeals Council noted that although the reporting doctors concluded appellant was disabled, objective tests, such as the 1974 pulmonary function studies, were negative for pulmonary disease.