**Larkin SMITH, Plaintiff-Appellant,**

v.

**Joseph A. CALIFANO, Secretary, Health, Education and Welfare, Defendant-Appellee.**

No. 81–5313.

United States Court of Appeals, Sixth Circuit.

Argued May 4, 1982.

Decided July 1, 1982.

Robert Hempson, Barbourville, Ky., John McFerrin, Charleston, W.Va., for plaintiff-appellant.

Patrick H. Molloy, U. S. Atty., Eldon L. Webb, Formerly U. S. Atty., Miles H. Franklin, Asst. U. S. Atty., Lexington, Ky., for defendant-appellee.

Before LIVELY and KEITH, Circuit Judges, and GILMORE,* District Judge.

LIVELY, Circuit Judge.

This is an appeal from a judgment of the district court affirming an administrative denial of benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, (the Act), 30 U.S.C. § 901 *et seq.* Since the application was filed prior to December 31, 1972, it came under Part B of Subchapter IV of the Act, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 921 *et seq.* (1970 Ed., Supp. II).

## I.

### A.

Larkin Smith, a former miner, filed an application for black lung benefits on June 20, 1972. The application showed that Smith was born in 1911, completed the eighth grade in school and had worked as a tipple operator for a coal mining company in Eastern Kentucky from 1955 to 1970. He described his disability as "short of breath." Smith's claim was denied on September 5, 1972, and he filed a request for reconsideration on September 17, 1972. Four medical reports were submitted with the request for reconsideration. Three of the reports were from physicians who had examined Smith and had made a diagnosis that he suffered from pneumoconiosis. X-ray films were submitted with the reports. On June 6, 1973 Smith was advised that the Social Security Administration, after recon-

sideration, still found him ineligible for benefits. A transmittal sheet which accompanied the Notice of Reconsidered Determination identified the following bases for the determination: that X-rays had been reread as negative for pneumoconiosis, that ventilatory functions studies exceeded interim table values and that the clinical evidence from doctors did not demonstrate a chronic lung disease or pulmonary impairment which is considered totally disabling. A space on this sheet for indicating the number of years in occupation was filled in "unkn."

Smith then obtained a *de novo* hearing before an administrative law judge (ALJ). The hearing was held on June 24, 1975, and the ALJ issued his decision on August 6, 1975, holding that Smith was not entitled to black lung benefits. When the Appeals Council affirmed the decision of the ALJ this became the final decision of the Secretary of Health, Education and Welfare (the Secretary). A complaint was then filed in district court and was submitted for decision on cross-motions for summary judgment. The district court found a conflict in the evidence, but concluded there was substantial evidence to support the decision of the Secretary.

### B.

At the hearing before the ALJ, Smith testified that he worked at the tipple of underground coal mines from 1955 until 1970. After earning approximately $1300 as a self-employed farmer in 1971, Smith returned to work at a tipple in 1972 but was laid off after six weeks because he was "too short of wind to hold the job." Smith's statement of earnings as recorded by the Social Security Administration showed non-continuous employment by Lewis Coal Co. of Manchester, Kentucky between 1955 and 1970. Wages were paid to Smith by Lewis Coal Co. in more than 30 quarters during the period and by at least one other coal company in 1956, a year in which there was

---

* The Honorable Horace Gilmore, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

no record of payments by Lewis. He was also paid in two quarters in 1971 by Mountain Clay, Inc. It is evident from the record that this is the coal tipple work which he testified took place in 1972.

Smith testified that it was very dirty around the tipple and that people working there were covered with coal dust. He described his symptoms as persistent coughing which produced sputum sometimes containing blood, plus chest pains and smothering sensations while lying down, all of which he was still experiencing at the time of the hearing. During his last mining job he had not had the strength to "catch the brakes and hold onto a car" at the tipple. At the time of the hearing he could not do chores such as mowing the lawn or tending the garden because of his shortness of breath. Smith stated that he could not climb steps or hills and was required to stop for rest if he walked as much as 200 or 300 yards. He related all his restrictions and impairments to a shortness of breath.

Smith was the only witness at the hearing. The ALJ considered a large number of medical reports which were entered on the record by stipulation. Five of these reports were from physicians who had examined Smith. Dr. B. H. Wells, a general practitioner, examined Smith and took chest X-rays on March 5, 1973. He concluded that Smith had pneumoconiosis and pulmonary emphysema. Dr. T. H. Biggs, the medical director of a state tuberculosis hospital, examined and X-rayed Smith as an out-patient on March 9, 1973. He concluded that Smith had coal worker's pneumoconiosis and stated in his report, "From the medical standpoint, this patient is disabled for further work in coal mines." Dr. Boyce E. Jones, a general practitioner with a sub-specialty in pulmonary diseases, who was a "certified reader" of X-rays, examined and X-rayed Smith on March 22, 1973. His diagnosis was pneumoconiosis, and he advised Smith to "avoid further contact to irritating dusts." Dr. Harold L. Bushey, an internist, examined Smith and read X-rays taken on March 27, 1973. His diagnosis was "chronic lung disease with pulmonary fibrosis compatible with coalminer's pneumoconi-

osis 2/2S." Dr. William H. Anderson, an internist with a sub-specialty in pulmonary diseases who was a member of the faculty of the University of Louisville School of Medicine, gave Smith a complete physical examination including X-rays. In his report he diagnosed hypertensive cardiovascular disease and category 1 pneumoconiosis.

The record also contained a spirometry report from a Lexington cardiopulmonary laboratory which was read as "normal" by Dr. Paul Van Lith, an internist with a sub-specialty in pulmonary diseases, a report from Dr. James B. Dukes, a Knoxville, Tennessee radiologist and certified reader, who found no radiographic evidence of pneumoconiosis in an X-ray made on February 15, 1973 and the report of Dr. Joseph M. Straughan, a Wise, Virginia radiologist who interpreted a February 28, 1973 X-ray as containing small rounded densities, "evidently ... fibrosis, approximately 2/2p? (sic)" Neither Dr. Van Lith, Dr. Dukes nor Dr. Straughan recorded a physical examination of Smith. In addition there were reports from six certified readers to whom the various X-rays previously listed were sent by the Secretary. None of these physicians ever saw or examined Smith. All of the X-rays were reread as negative for pneumoconiosis and most of the films were found to be of poor quality.

The ALJ stated in his decision that he had carefully considered all of the evidence. Yet the only items of medical evidence which he referred to specifically were normal pulmonary function studies and the negative X-ray readings. The decision did not mention the evidence of the five examining physicians, and it summarized Smith's testimony concerning his symptoms and impairments in two typewritten lines.

II.

A.

The ALJ based his decision on a series of findings: (A) that the evidence failed to establish the existence of "complicated pneumoconiosis," which would give rise to an irrebuttable presumption of disability

due to pneumoconiosis under 20 C.F.R. § 410.418 and 30 U.S.C. § 921(c)(3); (B) that the evidence failed to show that Smith was entitled to a rebuttable presumption of disability due to pneumoconiosis based on 10 years employment and application of the "interim criteria" contained in 20 C.F.R. § 410.490; (C) that the evidence did not disclose an impairment which met the duration requirement and was an impairment listed in an appendix to 20 C.F.R. § 410.424, or the medical equivalent of a listed impairment; (D) that the evidence did not establish an impairment which met the level of severity required to find pneumoconiosis disabling by reference to a table in 20 C.F.R. § 410.426(b) or by a physical performance test described in § 410.426(c); (E) that "other relevant evidence" did not establish the presence of a condition which qualified Smith for benefits under the alternative provisions of 20 C.F.R. § 410.-426(d).

▇ Neither the ALJ, the Appeals Council nor the district court referred to 30 U.S.C. § 921(c)(4)[1] which was added to the Act by the 1972 amendments and applied to Smith's claim. This subsection created a new rebuttable presumption that a person with 15 or more years of employment in underground mines who submits a chest X-ray which is negative for complicated pneumoconiosis, but who demonstrates by other evidence the existence of a totally disabling chronic respiratory or pulmonary impairment, is totally disabled due to pneumoconiosis. The ALJ found that Smith had been employed in coal mines "for a period

of more than ten years." There was no finding that Smith had worked for less than fifteen years. The statement in Smith's application and at the hearing that he worked at the tipple of an underground coal mine from 1955 until 1970 and again in 1971 or 1972 was uncontradicted. His social security records showed employment throughout this 15-year period by at least three coal companies. Because Smith satisfied the statutory time requirement and had submitted X-rays which were interpreted by rereaders as negative for pneumoconiosis, it was the duty of the ALJ and the Appeals Council to determine whether he met all the requirements of § 921(c)(4). *Cunningham v. Califano,* 590 F.2d 635, 637 (6th Cir. 1978); *Ansel v. Weinberger,* 529 F.2d 304, 309–10 (6th Cir. 1976).

### B.

▇ Nearly ten years has elapsed since Smith began his quest for benefits. Under these circumstances we will make the required determination from the complete administrative record which is before us. Smith did not establish the existence of pneumoconiosis by ventilatory function studies and his X-rays were interpreted as negative by non-examining certified readers. However, there was an abundance of evidence that he suffered from a disabling chronic respiratory or pulmonary impairment. The reports of Drs. Wells, Biggs, Jones, Bushey and Anderson all indicated that Smith had a respiratory or pulmonary impairment. Smith testified that his shortness of breath had continued for five years and was worse at the time of the hearing

---

1. 30 U.S.C. § 921(c)

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally dis-

abled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

than when he last worked. This is consistent with coal workers' pneumoconiosis which is a progressive disease. Two of the doctors found pulmonary fibrosis, a condition included with the definition of "pneumoconiosis." See 20 C.F.R. § 410.401(b)(1). Finally, Dr. Biggs stated unequivocally that Smith was "disabled from further work in coal mines." As in *Ansel v. Weinberger, supra*, there was no medical evidence which contradicted this opinion. The medical evidence, when examined in the light of Smith's age, education and work experience, is sufficient to establish his disability from pneumoconiosis. 20 C.F.R. § 410.-426(d). The combination of medical evidence from examining physicians and Smith's testimony concerning his symptoms and limitations triggered the rebuttable presumption of § 921(c)(4). *See Miniard v. Califano*, 618 F.2d 405, 409 (6th Cir. 1980). The only evidence on which the ALJ could have relied to find that Smith was not disabled was the normal ventilatory test and the negative X-ray rereadings. However, the "other relevant evidence" test of § 410.426(d) applies when a ventilatory study or physical performance test cannot or, for medical reasons, should not be performed, or "where evidence obtained as a result of such tests does not establish that the miner is totally disabled . . . ." A finding of disability under § 410.426(d) cannot be denied on the basis of a normal ventilatory test, for to do so would defeat the purpose of this alternative method of proving disability. *Cf. Ansel v. Weinberger, supra* (negative X-ray rereadings cannot rebut a statutory presumption that is predicated on such a reading). None of the X-ray rereaders offered any belief that Smith did not have a disability of some sort.

Once it is established that an applicant is entitled to the presumption of § 921(c)(4), that presumption may be rebutted only by showing that the miner does not have pneumoconiosis or that his impairment did not arise out of, or in connection with, employment in a coal mine. The Secretary made no attempt to show that Smith's impairments did not arise out of his coal mine employment. Neither the negative X-rays nor ventilatory function study values may be relied on to rebut the presumption. *Ansel v. Weinberger, supra*, 529 F.2d at 310. Yet they were the only items of evidence referred to by the ALJ.

This court has stressed the fact that the 1972 amendments to the Act were designed to provide relief to long-term miners who had been denied benefits under the Secretary's administration of the 1969 provisions, based primarily on negative X-ray readings. *See, e.g., Morris v. Matthews*, 557 F.2d 563 (6th Cir. 1977). This appears to be yet another case where due deference has not been accorded the manifest congressional intent. *See* S.Rep.No.92–743, 92nd Cong., 2d Sess., reprinted in [1972] U.S.Code Cong. & Adm.News 2305. Since proper application of § 921(c)(4) and 20 C.F.R. § 410.-426(d) to Smith's claim would have resulted in a finding of total disability due to pneumoconiosis, the Secretary's finding to the contrary is not supported by substantial evidence.

The judgment of the district court is reversed. The cause is remanded to the district court for further remand to the Secretary with directions to enter an award of benefits.