John COLLINS, Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Defendant-Appellee.

No. 83–5214.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1984.

Decided May 31, 1984.

Alva A. Hollon, Jr., Hazard, Ky., Paul Collins, Lexington, Ky. (argued), for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Fred A. Stine, V., Miles H. Franklin, Peter Davenport (argued), Asst. U.S. Attys., Lexington, Ky., for defendant-appellee.

Before KEITH, MARTIN and KRUPANSKY, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

John Collins, a sixty-eight-year old, with eighteen years experience as a coal miner, seeks black lung benefits under the rebut-

table presumption of disability due to pneumoconiosis, under 30 U.S.C. § 921(c)(4). *See* Part B Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901. After an exhaustive administrative process, the Secretary denied Collins' claim. Upon judicial review, a Magistrate found substantial evidence to support the presumption and recommended awarding benefits. The district court, however, rejected the recommendation and found substantial evidence to support the Secretary's decision.

Collins has a fourth-grade education. He last worked in the mines in 1967, leaving because of shortness of breath. He later experienced breathing problems, difficulty in sleeping, fatigue, and other respiratory ailments. He has had four heart attacks and currently suffers from chest pain. He first sought benefits on October 21, 1971. His case was reopened in 1979 but was again denied benefits.

The medical evidence in the record shows that John Collins is a "very sick man." Dr. Randall D. Collins examined John Collins in December, 1972. His report was issued on December 22, 1972. In it Dr. Collins found that John Collins had marked dysprea, a bad cough, and edema of abdomen and legs. Dr. Collins also diagnosed pneumoconiosis, emphysema, bronchitis, and myocardial disease. In response to a question on the extent of Collins' respiratory or pulmonary disease and its effect on John Collins' ability to perform in a coal mine, Dr. Collins concluded, John Collins "was not able to work—a very sick man [pulmonary and heart]—getting progressively worse." Dr. Collins reaffirmed this diagnosis in a July 8, 1975 report noting John Collins' pulmo-

nary condition included a barrel chest, dullness in lung fields to percussion, rales, and wheezing. Dr. Collins concluded John Collins was "totally and permanently disabled and [the] prognosis is not good."

Dr. Paul L. Odom examined Collins on January 29, 1974. Dr. Odom did not perform a pulmonary function study because of Collins' heart condition. However, his examination did reveal that Collins' suffered from coal miner's pneumoconiosis, category 1/1q., hypertension and arteriorsclerotic heart disease. Based on this diagnosis, Dr. Odom found Collins was totally and permanently disabled and unfit for work in a coal mine. Dr. Odom's diagnosis was consistent with that of Dr. W.F. Clarke, who had examined Collins on September 10, 1973. Dr. Clarke, an internist, concluded that claimant was "permanently and totally disabled" for all work in a dusty environment and for all manual labor.

X-ray evidence regarding Collins was also introduced concerning the extent of his pneumoconiosis. Some chest x-rays revealed positive signs of pneumoconiosis, while others did not.

The evidence the Secretary found most creditable was a report of Dr. Un Hun Ang. Dr. Ang did not examine Collins. Instead, he reviewed the medical testimony contained in Collins' file. Based on this review, Dr. Ang found that, although Collins suffered from a heart condition, he "does not have significant respiratory impairment. His ability to perform his former work in the mine is limited by his cardiac problem more than anything."

■ 30 U.S.C. § 921(c)(4)[1] was added to the Federal Coal Mine Health and Safety

---

1. 30 U.S.C. § 921(c)

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable pre-

sumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death, he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish a presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mind were

Act in 1972. It creates a rebuttable presumption that "a person with 15 or more years of employment in underground mines who submits a chest x-ray which is negative for complicated pneumoconiosis, but who demonstrates by other evidence the existence of a totally disabling chronic respiratory or pulmonary impairment, is totally disabled due to pneumoconiosis." *Smith v. Califano,* 682 F.2d 583, 586 (6th Cir. 1982); *see also Haywood v. Secretary Health and Human Services,* 699 F.2d 277, 282 (6th Cir.1983); *Caraway v. Califano,* 623 F.2d 7, 10 (6th Cir.1980). As noted in the Senate Report on the 1972 amendments, one of the purposes of section 921(c)(4) was to

> [r]elax the often insurmountable burden of proving eligibility by prohibiting a denial of claims based solely on a negative chest roentgenogram and by presuming that miners with 15 years experience who are disabled by a respiratory or pulmonary impairment are disabled by pneumoconiosis.

Senate Report No. 92–743 (1972) 92d Cong., 2d Sess., 2 U.S.Cong. & Admin.News 1972, 2305 at 2306; *see also Ansel v. Weinberger,* 529 F.2d 304, 306 (6th Cir.1976). The Act is a remedial measure intended to be construed in a liberal manner. *Miniard v. Califano,* 618 F.2d 405, 410 (6th Cir. 1980). More specifically, the 1972 amendments were designed to guarantee that the Act benefit those coal miners afflicted with pneumoconiosis. *Haywood v. Secretary Health and Human Services,* 699 F.2d at 281.

■ We believe this record indicates ample evidence to trigger the rebuttable presumption of section 921(c)(4). We further find that the Secretary has not rebutted that presumption. Therefore, Collins should have been awarded benefits.

Initially, we note that the administrative law judge found that the "documentary evidence in the record, together with the

substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have

testimony at the hearing, substantially corroborates" Collins' claim that he was employed as a miner for at least fifteen years. Thus, we find Collins satisfied section 921(c)(4)'s first requirement that a beneficiary be employed as a coal miner for fifteen or more years.

Next, Collins has produced evidence to demonstrate the existence of a totally disabling respiratory or pulmonary impairment. He testified that since he last worked in the mines he has experienced shortness of breath, difficulty in sleeping, and smothering during damp weather. This subjective testimony was reaffirmed by his wife, Mae Collins. Moreover, three of the four physicians who performed physical examinations on Collins concluded he was permanently disabled due to a pulmonary impairment. The fourth physician, Dr. Carl Pigman, treated Collins between March 17 and 22, 1969, after he was admitted to the emergency room of the Appalachian Region Hospital in Whitesburg, Kentucky, after complaining of severe pain and burning on urination and soreness in the scrotal region. The only medical evidence to contradict these findings of disability is the report of Dr. Ang.

■ As we noted in *Haywood v. Sullivan,* 699 F.2d 277, 285–286 (6th Cir.1983), "[p]roper deference to the manifest congressional intent [behind the enactment of section 921(c)(4) ] is demonstrated where special consideration is given the diagnosis of the treating physician and of all physicians who examine the claimant." *See also Conn v. Harris,* 621 F.2d 228, 229–30 (6th Cir.1980); *Cunningham v. Califano,* 590 F.2d 635, 637 (6th Cir.1978); *Ansel v. Weinberger, supra,* 529 F.2d at 310. *Cf. Lawson v. Secretary Health and Human Services,* 688 F.2d 436, 439 n. 4 (6th Cir. 1982) (The determination on whether a claimant truly suffers from pneumoconiosis "might be more reliably made by a physician who had observed the severity of

pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

**1180**

the patient's somatic symptoms," than by one who had not examined the patient. "This is especially true because black lung often cannot be clearly diagnosed by either x-ray or other tests."); *Dickson v. Califano*, 590 F.2d 616, 623 (6th Cir.1978) (subsequent negative x-ray reading by a nonexamining physician did not constitute substantial evidence to rebut the presumption created by the positive reading by a qualified examining physician).

Medically we note that pneumoconiosis is a slow, progressive disease. Its characteristics and symptoms often do not manifest themselves in a way that promote immediate detection. In some cases the disease may take years before it is readily detectable. *Collins v. Weinberger*, 401 F.Supp. 377, 381 (W.D.Va.1975); *see also Haywood v. Sullivan*, 699 F.2d at 284; *Begley v. Mathews*, 544 F.2d 1345, 1353–54 (6th Cir. 1976), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977). Undoubtedly, the personal examinations of treating and consulting physicians are more apt to provide a better assessment of a claimant's respiratory or pulmonary condition than are reports issued by experts who have never seen or treated a patient. Therefore, like the situation where the existence of a negative x-ray or pulmonary functional study, standing alone, does not provide sufficient evidence to rebut the presumption of disabling pneumoconiosis, *Caraway v. Califano*, 623 F.2d at 12; *Ansel v. Weinberger*, 529 F.2d at 310, a finding of nondisability contained in the report of a physician who has not examined a patient is insufficient evidence to rebut the positive proof of disability established in this case. After Collins produced unequivocal medical testimony of his disability due to employment-caused pneumoconiosis, the Secretary was required to respond with adequate medical evidence that Collins does not have pneumoconiosis. *Smith v. Califano*, 682 F.2d at 587; *Conn v. Harris*, 621 F.2d at 230; *Ansel v. Weinberger*, 529 F.2d at 310. Such has not been done here.

■ Our finding that Collins has demonstrated sufficient evidence to trigger section 921(c)(4)'s presumption of disability and that the Secretary has failed to rebut

that presumption is not undermined because two of the medical reports relied upon by Collins are dated after the June 30, 1973 cut-off date for the allowance of benefits. *See Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir.1976), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977). "[R]elevant medical evidence which is accumulated subsequent to the [cut-off] date may relate back and should be considered in determining [a] claimant's condition as of June 30, 1973." *Caraway v. Califano*, 623 F.2d at 11. *See also Lawson v. Secretary of Health and Human Services*, 688 F.2d at 439 n. 5; *Begley v. Mathews, supra*, 544 F.2d at 1354–55. Unfortunately, the Secretary overemphasized the existence of negative x-rays and pulmonary functional studies in denying Collins' claim for benefits. We have consistently stated, however, that reliance on this type of negative medical data is insufficient to rebut the presumption of disability created by 30 U.S.C. § 921(c)(4). *Haywood v. Secretary*, 699 F.2d at 285; *Smith v. Califano*, 682 F.2d at 587; *Caraway v. Califano*, 623 F.2d at 12; *Miniard v. Califano*, 618 F.2d at 409–410; *Cunningham v. Califano*, 590 F.2d at 637; *Ansel v. Weinberger*, 529 F.2d at 309–310.

The judgment of the district court is reversed, and the case is remanded for further remand to the Secretary with directions to enter an award of benefits.