**Bernie HATFIELD, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH and HUMAN SERVICES, Defendant-Appellee.**

**No. 83–5283.**

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1984.

Decided Sept. 6, 1984.

**42.** *Id.* 367 F.2d at 227.

**43.** *See supra* page 267.

**44.** 367 F.2d 224 (5th Cir.1966).

Albert A. Burchett, argued, Burchett, Burchett & Burchett, Prestonsburg, Ky., R. Roland Case, Pikeville, Ky., for plaintiff-appellant.

Louis De Falaise, U.S. Atty., Miles Franklin, Karl Anderson, argued, Asst. U.S. Attys., Lexington, Ky., for defendant-appellee.

Before MERRITT, MARTIN and KRUPANSKY, Circuit Judges.

KRUPANSKY, Circuit Judge.

Bernie Hatfield (Hatfield), a sixty-nine year old former coal miner, appealed the judgment entered by the United States District Court for the Eastern District of Kentucky affirming the denial of black lung benefits by the Secretary of Health and Human Services.

Hatfield filed his application for black lung benefits pursuant to the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 923(b) on December 14, 1971. This application was denied initially and upon reconsideration by the Secretary. Consequently, Hatfield was granted a *de novo* hearing before an Administrative Law Judge (A.L.J.). On September 5, 1975, the A.L.J. determined that Hatfield was not entitled to black lung benefits. The Appeals Council affirmed the A.L.J.'s decision on October 3, 1975.

Claimant's avenue of appeal lead him to the district court where the case was referred to a magistrate for review. The magistrate's report and recommendation deemed the medical evidence as conflicting and found the Secretary's conclusion that claimant did not suffer from pneumoconiosis reasonable. However, the magistrate noted that the A.L.J. considered the evidence only under the interim regulations (20 C.F.R. § 410.490 *et seq.*) and failed to evaluate the data under the requisite permanent standards (20 C.F.R. § 410.412 *et seq.*). The district court accepted the magistrate's suggestion that the case be remanded for consideration under the permanent standards and to specifically determine whether claimant's primary problem was a chronic respiratory condition or whether his breathing and other physical impairments were attributable solely to his obesity.

Subsequent to remand, additional evidence was obtained and the record reviewed in its entirety. The Secretary again concluded that claimant was ineligible for benefits. In pertinent part, the Council held:

> ... the Appeals Counsel (sic) can find no basis for finding that Claimant was disabled for coal mine employment on or before June 30, 1973, by virtue of a significant pulmonary or respiratory impairment. While the Council recognizes that the Claimant has experienced shortness of breath for several years, in addition to other seemingly minor breathing problems, it is apparent that much of his symptomatology is the result of his extreme obesity and heart disease rather than any significant lung disorder.

The district court upheld the Secretary's decision and the claimant appealed to this court.

In brief the record discloses that the claimant worked in the mines for at least twenty-three years after completing the eighth grade. His testimony before the A.L.J. reflected that in 1970 he could no longer perform his duties in the mines and "didn't have enough breath to get around." Claimant further stated that he was unable to climb stairs, or mow his lawn for many years, and felt as if he was smothering when attempting to sleep at night. He testified that he coughs frequently and continues to experience constant chest pains. Claimant's testimony also revealed that he is the recipient of a miner's pension, work-

ers compensation and Social Security Disability Benefits.

The medical evidence accumulated in the record includes conflicting reports from thirteen physicians.

Dr. Arthur Levy, a Board certified radiologist[1], submitted his interpretation of an X-ray taken on February 11, 1971 which concluded that "in the lower one-third of each lung there are a few irregular opacities of medium size indicating UICC classification of pneumoconiosis 1/lt."[2] Dr. Levy also detected slight to moderate emphysema. A re-evaluation of this X-ray by Dr. Aaron Weinstein, also a Board certified radiologist, concluded that the film was negative for pneumoconiosis.

Dr. Evans, a Board certified internist, examined claimant on February 17, 1971. Claimant complained of chest discomfort and fluid retention. Dr. Evans' physical examination found the lungs clear and the breathing sounds not unduly faint considering the thickness of the thoracic wall. Ventilatory function studies disclosed a one second forced expired volume (FEV) of 2.2 and a maximum voluntary ventilation (MVV) of 66. Dr. Evans considered the MVV performance inconsistent and not suitable for clinical application. A chest X-ray was taken as part of the physical examination conducted by Dr. Evans. Dr. James Zimmerman, a radiologist, interpreted this X-ray and found the lungs to be clear. The final clinical diagnosis by Dr. Evans was (1) obesity, extreme, probably exogenous, with moderate restrictive pulmonary dysfunction; (2) bronchitis, chronic, aggravated by cigarettes, with mild, obstructive pulmonary dysfunction; and (3) osteoarthritis, mild to moderate, of lumbar spine and hips.

On September 30, 1971, claimant was X-rayed by Dr. A.H. Henderson, a Board certified family practitioner, who found pneumoconiosis category 2/2q. Dr. Henderson also indicated that claimant had severe heart disease aggravated by his pneumoconiosis which precluded any type of gainful employment.

Pulmonary function studies were performed on October 5, 1971, under the direction of Dr. B.E. Rowe, an anesthesiologist, who found an FEVI of 2.48 and an MVV of 160.9. Based on the foregoing medical evidence, a period of disability and disability insurance benefits were awarded claimant due to his obesity and moderate restrictive and obstructive pulmonary dysfunction.

Dr. Jesse D. Harris, a Board certified internist, reported examining claimant on February 3, 1972, and March 10, 1972 for complaints of malaise, chest pain, shortness of breath and a chronic cough. The physical examination reflected diminished breathing sounds without rales. A chest X-ray taken in conjunction with these examinations was reported by Dr. Harris as showing pneumoconiosis category 1/1p and minimal emphysema. Final diagnosis was pneumoconiosis category 1/1p.

Plaintiff was examined by Dr. P.L. Odom, a general practitioner, on April 8, 1972. Physical examination found plaintiff short of breath at rest. The breath sounds were coarse but no rales or rhonchi were detected. A chest X-ray taken on April 8,

---

1. Requirements for certification by The American Board of Radiology include four years of postgraduate training followed by comprehensive written and oral examinations. A portion of the oral examination is devoted to testing a candidate's proficiency in diagnosing, among other things, diseases of the lungs. *See* The American Board of Radiology's *Booklet of Information for Examination in Diagnostic Radiology* (1983). This court takes judicial notice that the qualifications of a certified radiologist are at least comparable if not superior to a physician certified as a reader pursuant to 42 C.F.R. § 37.51, discussed *infra*.

2. The UICC classification identifies the spread of pneumoconiosis. The disease is divided into two general categories: simple and complicated. Simple pneumoconiosis is essentially divided into three states: first, second, and third, depending on the progress of the obstructive material in the lungs. Stage 1 is satisfied if $\frac{1}{3}$ of the lungs have been invaded by the disease. Stages 2 and 3 require a greater degree of invasion. The designations "p" and "q" indicate the size of the individual blockages. A "p" nodule is 1.5 millimeters in diameter or less; a "q" nodule is larger from 1.5 to 3 mm.

1972 was interpreted as showing fine, rounded opacities consistent with coal worker's pneumoconiosis category 2/2q. Dr. Odom considered claimant totally and permanently disabled due to coal worker's pneumoconiosis and hypertensive cardiovascular disease. In addition, Dr. Odom indicated that as a result of plaintiff's unusual breathlessness and marked fluid retention, cor pulmonale (heart strain resulting from disease affecting the lungs) should be considered in evaluating plaintiff's condition. The April 8, 1972 chest X-ray was reinterpreted by Dr. Philip Whittlesey, an internist with a subspecialty in pulmonary diseases, and Dr. M.W. Donner, a radiologist and gastroenterologist, both of whom found the film negative for pneumoconiosis.

Dr. Odom again examined plaintiff on June 5, 1973. Physical findings were as previously reported. A pulmonary function study disclosed a result of an FEV of 2.5 and an MVV of 68.8. The final diagnosis was (1) coal worker's pneumoconiosis category 2/2q, (2) possible cor pulmonale, (3) chronic bronchitis.

Additional pulmonary function studies were performed on April 7, 1973, under the direction of Dr. Thomas Jarboe, a Board certified internist with a subspecialty in pulmonary diseases. The reported results were an FEVI of 2.44 and an MBC (MVV) of 129.65. Plaintiff's height was shown as 73 inches. Dr. Jarboe's test results were reviewed by Dr. H. David Kerr, an internist with subspecialty in pulmonary diseases. Dr. Kerr evaluated the findings of April, 1973 with those of February, 1971. Dr. Kerr concluded that the 1971 test was unsatisfactory, but that the 1973 test showed an FEV of 2.44 and MVV of 130.

On June 26, 1978, Dr. Wilder P. Montgomery, a diplomat of the American Board of Internal Medicine with a subspecialty in pulmonary diseases and also a certified "A" reader[3], reviewed all the medical evidence submitted in this case. This evaluation was made in response to a request by the Appeals Council; however, Dr. Montgomery did not personally examine the claimant. He concluded that claimant suffered from mild restrictive and obstructive lung disease but that this impairment "does not contribute to a significant degree to claimant's disability."

The medical record also contains several reports by Dr. R.A. Salton, a general practitioner, who first examined claimant in August of 1970. Plaintiff complained of shortness of breath and swelling of the legs. His weight was 345 pounds. In a letter dated January 13, 1971, Dr. Salton reported that claimant had reduced his weight to about 300 pounds, but advised that claimant should continue to reduce to about 270 pounds. In a letter dated November 2, 1971, however, Dr. Salton noted that he had been unsuccessful in reducing the claimant's weight below 300 pounds. Dr. Salton made no determinations regarding plaintiff's disability or coal miner's pneumoconiosis.

Upon reviewing the medical evidence outlined above, the district court upheld the Secretary's determination that claimant did not meet the criteria for black lung disability and therefore was ineligible for benefits.

Hatfield's claim was filed prior to July 1, 1973, and is therefore subject to the interim adjudicatory rules and standards codified as 20 C.F.R. § 410.490 *et seq.* Section 410.490 provides for a rebuttable presumption of pneumoconiosis as follows:

> (b) *Interim presumption.* With respect to a miner who files a claim for benefits before July 1, 1973 ... such miner

---

**3.** The requirements for reader certification found in 42 C.F.R. § 37.51 were established by the National Institute of Health and Safety. To become a certified "A" reader, a physician must submit six sample X-rays from his or her own files to the Appalachian Laboratory for Occupational Safety and Health (ALOSH) consisting of two X-rays negative for pneumoconiosis, two X-rays showing simple pneumoconiosis, and two showing complex pneumoconiosis. As an alternative, the physician seeking an "A" rating can take a course approved by ALOSH in the classification systems for diagnosing pneumoconiosis. To become a certified "B" reader, a physician must pass a specially designed proficiency examination administered by ALOSH.

will be presumed to be totally disabled due to pneumoconiosis ... if:

(1) One of the following medical requirements is met:

(i) A chest roentgenogram (X-ray) ... establishes the existence of pneumoconiosis; or

(ii) In the case of a miner employed for at least fifteen years in underground or comparable coal mine employment, ventilatory studies establish the présence of a chronic respiratory or pulmonary disease ... as demonstrated by values which are equal to or less than the values in the following table:

| | Equal to or less than— | |
|---|---|---|
| | FEV | MVV |
| 67″ or less | 2.3 | 92 |
| 68″ | 2.4 | 96 |
| 69″ | 2.4 | 96 |
| 70″ | 2.5 | 100 |
| 71″ | 2.6 | 104 |
| 72″ | 2.6 | 104 |
| 73″ or more, and | 2.7 | 108 |

(2) The impairment established in accordance with paragraph (b)(1) of this section arose out of coal mine employment.

The regulations further provide that the presumption can only be rebutted by the Secretary's showing that the individual is performing or is capable of performing his usual coal mine work or comparable gainful work. § 410.490(c)(1) and (2).

Under § 410.428, incorporated by reference into the interim regulations at § 410.-490(b)(1)(i), an X-ray establishes the existence of pneumoconiosis if it is read as classifying category 1 or greater. The gravamen of Hatfield's argument on appeal was that his X-ray evidence established the presumption in accordance with § 410.-490(b), and that the presumption was not rebutted by the Secretary. Specifically, claimant relied upon the following chronology to support the applicability of the presumption to his case: (1) On September 30, 1971, Dr. Andrew H. Henderson examined Hatfield and interpreted a chest X-ray film taken on that date to disclose coal workers' pneumoconiosis 2/2q; (2) On February 3, 10 and March 10, 1972, Dr. Jesse Harris examined Hatfield and interpreted Hatfield's chest X-ray film taken as part of the examinations to reflect pneumoconiosis 1/1p; (3) On April 8, 1972, Dr. Paul Odom examined Hatfield and interpreted his chest X-ray film of April 8, 1972 to support a finding of coal workers' pneumoconiosis 2/2q; and (4) On February 11, 1972, Dr. Arthur E. Levy, a Board certified radiologist interpreted Hatfield's chest X-ray of that date to show pneumoconiosis 1/1t.

■ This court concludes that the argument presented by the plaintiff is convincing. It is well-established that a single positive X-ray can trigger the presumption in favor of a claimant, and the Secretary cannot rebut that presumption merely by presenting the results of a negative reinterpretation of the same X-ray. *See e.g., Haywood v. Secretary,* 699 F.2d 277, 283 and 285 (6th Cir.1983); *Smith v. Califano,* 682 F.2d 583, 587 (6th Cir.1982); *Lawson v. Secretary,* 688 F.2d 436, 438 (6th Cir.1982); *Miniard v. Califano,* 618 F.2d 405, 410 (6th Cir.1980); *Singleton v. Califano,* 591 F.2d 383, 385 (6th Cir.1979); *Cunningham v. Califano,* 590 F.2d 635 (6th Cir.1978); *Dickson v. Califano,* 590 F.2d 616, 623 (6th Cir.1978); *Burchett v. Mathews,* 575 F.2d 1189, 1191 (6th Cir.1978); *Ansel v. Weinberger,* 529 F.2d 304, 309–310 (6th Cir. 1976).

■ The Secretary has urged that *Haywood* and other cases cited above are distinguishable from the instant case in that the physicians who submitted the positive X-rays in the case at bar, namely, Drs. Henderson, Harris, Odom and Levy, were not certified as "A" or "B" readers in accordance with 42 C.F.R. § 37.51. The district court accepted the Secretary's argument that the failure of the claimant to submit X-rays interpreted by a reader certified by the Appalachian Laboratory for Occupational Safety and Health (ALOSH) constituted a critical point of departure from previous Sixth Circuit decisions where the presumption was deemed to have been

raised. The Sixth Circuit, however, has made no such distinction.

Initially, it must be emphasized that the certification procedures for physicians under 42 C.F.R. § 37.51 were enacted as part of the ongoing program designed to monitor the physical condition of working miners in compliance with the Federal Mine Safety and Health Act of 1977. The purpose for the ALOSH certification requirement was to ensure that the health of the miners would be continuously monitored by radiologists of the highest caliber. The high standards were promulgated to compensate for the dearth of medical facilities and personnel available to accommodate the special demands of coal miners in the coal mining regions. *See e.g.,* S.Rep. No. 92–743, 92nd Cong., 2nd Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Ad. News, 2305, 2327; H.R.Rep. No. 95–151, 95th Cong., 2nd Sess., 2–13, 20–21 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News, 237, 238–248, 256. In essence, the ALOSH standards established the *minimum* qualifications for a "reader" involved in the monitoring program. Nothing in 42 C.F.R. § 37.51 prohibits an equally or perhaps even more highly qualified radiologist certified by the American Board of Radiology from interpreting X-rays submitted to raise the presumption of pneumoconiosis in accordance with the requirements of the Black Lung Benefits Act. It therefore appears indisputable that the ALOSH certification requirement was adopted as part of a prophylactic medical program designed to safeguard the health of working miners, and should not, therefore, be implemented to the detriment of disabled miners seeking relief through the black lung benefits program.[4]

■ Moreover, the language implemented by Congress in ordering the Secretary to promulgate interim regulations incorporating presumptions in favor of the black lung benefit claimants was clear and unequivocal. Congress directed that the presumption should arise when the miner is suffering from a chronic dust disease of the lung "when diagnosed by a chest roentgenogram (X-ray)." 30 U.S.C. § 921(c)(3) (1972) (effective retroactively to December 30, 1969). Congress in no way qualified the availability of the presumption by requiring that the submitted X-rays be interpreted exclusively by ALOSH certified readers. Moreover, the Secretary obviously understood the Congressional intent to permit X-rays to be interpreted by any qualified reader to satisfy the presumption, as none of the interim regulations promulgated pursuant to 30 U.S.C. § 921 (1972) required interpretation by an ALOSH certified reader.[5]

This court's conclusion that the physician interpreting X-rays need not be certified by ALOSH in accordance with 42 C.F.R. § 37.51 to establish the presumption under 20 C.F.R. § 410.490(b)(1)(i) is not unprecedented in this circuit. In *Miniard v. Califano,* 618 F.2d 405, 410 (6th Cir.1980), the court held that the claimant had satisfied the statutory requirements to raise the presumption under 20 C.F.R. § 410.490 where three positive X-ray readings were submitted by two radiologists and a general

---

**4.** This is not to say that the reliance by some courts upon X-ray readings submitted by ALOSH-certified readers to establish or rebut the presumption of pneumoconiosis in black lung benefit cases has been misplaced. Rather, the import of the above holding is simply that, under the applicable black lung benefit code provisions and regulations, positive X-ray evidence from any well-qualified radiologist is sufficient to establish the presumption of pneumoconiosis, whether said physician is certified by the American Board of Radiology or by ALOSH.

**5.** Both the interim and permanent regulations which permit the presumption to arise by submission of a positive X-ray are silent as to the qualifications of the reader. *See e.g.,* 20 C.F.R. §§ 410.414(a)(1); 410.418(a); 410.428(a)(1); 410.454(a)(1); 410.490(b)(1)(i). This court also notes that in subsequent amendments to the Act which have no retroactive effect and therefore are not directly applicable here, Congress directed the Secretary to consider all relevant evidence in black lung benefits cases, including "*a board certified or board eligible radiologist's* interpretation of a chest roentgenogram which is of a quality sufficient to demonstrate the presence of pneumoconiosis ..." 30 U.S.C. § 923(b) (1981) (as amended 1978) (emphasis added).

practitioner, none of whom were identified in the opinion as certified readers under 42 C.F.R. § 37.51. As in the case at bar, at least one of claimant Miniard's physician's was a "Board certified" radiologist.

More recently, in *Haywood, supra,* this court stated that "a certified reader's positive interpretation of a single X-ray is sufficient to trigger the rebuttable presumption [under 20 C.F.R. § 410.490(b)(1)(i).]" 699 F.2d at 283. Although the term "certified reader" was not more precisely defined in that opinion, it is not illogical to conclude a comprehensive definition was intended encompassing both Board certified radiologists as well as physicians certified by AL-OSH under 42 C.F.R. § 37.52.

■ This court concludes that the submission of the positive X-rays by the claimant in the case at bar, where at least one of the positive X-rays was interpreted by a Board certified radiologist, was sufficient to raise the presumption of pneumoconiosis in accordance with 20 C.F.R. § 410.-490(b)(1)(i).

The Secretary has argued that even if the presumption was triggered by medical testimony it was effectively rebutted in the instant case. The relevant regulations provide that the presumption may only be rebutted if:

(1) There is evidence that the individual is, in fact, doing his usual mine work or comparable and gainful work ... or

(2) Other evidence, including physical performance tests (where such tests are available and their administration is not contraindicated), establish that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1)).

20 C.F.R. § 410.490(c)(1) and (2). *See also Miniard v. Califano,* 618 F.2d 405, 410 (6th Cir.1980).

The position advanced by the Secretary on appeal was that the positive interpretation of the X-rays which gave rise to the presumption were effectively rebutted by subsequent negative rereadings of the same X-rays. The Secretary further argued that major emphasis should be placed on the reports submitted by Dr. Salton wherein he concluded that the claimant could possibly return to work if he lost weight, thereby supporting the Secretary's decision that claimant's breathing impairments are due to obesity rather than pneumoconiosis.

■ The Secretary's reliance on the negative reinterpretations to rebut the presumption is misplaced. This court has consistently held that once the presumption is raised by submission of a positive X-ray, a negative reinterpretation of that same X-ray will not serve to rebut the presumption. *Haywood, supra; Ansel v. Weinberger,* 529 F.2d 304 (6th Cir.1976). Not only is the Secretary prohibited from relying on subsequent X-ray interpretations to create a factual conflict or rebut a presumption, but, in addition, rebuttal requires an affirmative showing by the Secretary that the claimant does *not* suffer from pneumoconiosis, or that the disease is not related to coal mine work. *Haywood, supra; Lawson, supra; Smith v. Califano,* 682 F.2d 583, 587 (6th Cir.1982); *Caraway v. Califano,* 623 F.2d 7, 12 (6th Cir.1980); *Dickson v. Califano,* 590 F.2d 616, 623 (6th Cir.1978); *Ansel, supra.*

■ The reports of Dr. Salton are similarly ineffective to rebut the presumption. Dr. Salton, a general practitioner, was apparently the first physician claimant consulted regarding his breathing difficulties. In reports dated December 31, 1970 and January 13, 1971, Dr. Salton wrote that he was "hopeful" that the claimant would "probably" be able to return to work if he lost weight. Due to the inconclusiveness of Dr. Salton's statements concerning claimant's ability to return to work, these reports can hardly suffice to rebut the presumption of disability due to pneumoconiosis.

This court is fully cognizant that it must uphold the Secretary's factual findings if supported by substantial evidence. *Lawson v. Secretary,* 688 F.2d 436, 438 (6th Cir.1982). Substantial evidence is such evi-

dence as a reasonable mind might accept to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■■ In reviewing the medical evidence in the record, this court finds that the reports of Dr. Salton do not constitute sufficient evidence of disability based solely on obesity. To the contrary, the great weight of medical evidence, when viewed in light of the presumption favoring the claimant as mandated by 20 C.F.R. § 410.490(b)(1)(i), substantially supports the conclusion that claimant is disabled due to pneumoconiosis. Since the Secretary has not rebutted the presumption, an award of black lung benefits to the claimant is in order. The case is therefore REVERSED and REMANDED with directions to the Secretary to award benefits.