767 F.2d 920
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JUNIOR GIBSON, PLAINTIFF-APPELLEE,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-5756
 United States Court of Appeals, Sixth Circuit.
 6/26/85
 
 E.D.Ky.
 AFFIRMED
 Appeal from the United States District Court for the Eastern District of Kentucky
 Before: KENNEDY and MILBURN, Circuit Judges; and RUBIN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Claimant Gibson appeals from the order of the District Court upholding the Secretary's denial of both social security disability benefits and black lung disability benefits.
 
 
 2
 In 1972, after approximately thirteen years of work in coal mines, Gibson filed a claim for black lung disability benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969. In 1974, Gibson filed a claim for social security benefits under Title II of the Social Security Act. After drawn-out procedural histories, both claims were finally denied by an Administrative Law Judge on February 9, 1982. The denials were upheld by the Appeals Council on April 7, 1982 and, subsequently, by the District Court.
 
 Black Lung Disability Benefits
 
 3
 The denial of black lung disability benefits was based on the ALJ's finding that Gibson did not have pneumoconiosis. The record reveals that three doctors who read Gibson's x-rays diagnosed pneumoconiosis. None of the three were certified readers, although two, Dr. Thomas Howald and Dr. Heimo Reckmann, were radiologists. The same x-rays were read by five other doctors, all certified readers, and found not to indicate pneumoconiosis.[1] Clinical data did not indicate pneumoconiosis. Gibson's forced expiratory volume (FEV) and maximum voluntary ventilation (MVV) figures were comfortably above the levels set as indicators of pneumoconiosis. The sole issue pertaining to the black lung claim is whether Gibson was entitled to benefit from the interim presumption of 20 C.F.R. Sec. 410.490(b)(1), which provides that,
 
 
 4
 a miner who files a claim for benefits before July 1, 1973 . . . will be presumed to be totally disabled due to pneumoconiosis . . . if:
 
 
 5
 (1) One of the following medical requirements is met:
 
 
 6
 (i) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis . . ..
 
 
 7
 Gibson filed his claim in 1972 and so would be entitled to the presumption that he is totally disabled by pneumoconiosis if the pertinent medical indicators, in this case an x-ray, establish its existence.
 
 
 8
 Gibson argues that the presumption arises anytime an x-ray is read as positive for pneumoconiosis. In essence, he is arguing that a positive reading establishes pneumoconiosis regardless of whether that reading is done by an Appalachian Laboratory for Occupational Safety and Health (ALOSH) certified reader or another physician. He cites Haywood v. Secretary, 699 F.2d 277 (6th Cir. 1983) as support. Haywood alone, however, seems to undermine Gibson's argument. It holds that 'a certified reader's positive interpretation of a single x-ray is sufficient to trigger the rebuttable presumption.' Id. at 283 (emphasis added). The record does not reveal that any ALOSH certified reader diagnosed pneumoconiosis.
 
 
 9
 In Hatfield v. Secretary, 743 F.2d 1150 (6th Cir. 1984), however, the court expressly rejected the Secretary's argument that the presumption did not arise where the only positive readings submitted by the claimant were from physicians who were not ALOSH certified readers. After a discussion of the role of certification procedures in the overall scheme of the Act, the court concluded that 'the physician interpreting X-rays need not be certified by ALOSH in accordance with 42 C.F.R. Sec. 37.51 to establish the presumption . . ..' Id. at 1156. Of Haywood, the court said, 'Although the term 'certified reader' was not more precisely defined in that opinion, it is not illogical to conclude a comprehensive definition was intended encompassing both Board certified radiologists as well as physicians certified by ALOSH . . ..' Id. at 1157.
 
 
 10
 Hatfield does not require the reader to be ALOSH certified, but does require that 'at least one of the positive X-rays [be] interpreted by a Board certified radiologist . . ..' Id. The 'Board' is the American Board of Radiology. A summary of the professional qualifications of Dr. Howald, who read one of Gibson's x-rays as positive, lists his specialty as radiology, but there is no indication that he is Board certified. The same is true of Dr. Reckmann, who also read an x-ray as positive. We therefore must conclude, based on the record, that the presumption did not arise.
 
 
 11
 Without the presumption, our review is limited to whether the record as a whole contains substantial evidence to support the ALJ's findings. 30 U.S.C. Sec. 923(b); 42 U.S.C. Sec. 405(g); Elkins v. Secretary, 658 F.2d 437 (6th Cir. 1981). We conclude that it does.
 
 
 12
 The x-rays read as positive by Dr. Howald and Dr. Reckmann were reread as negative by five ALOSH certified 'A' and 'B' readers. The ALJ was entitled to give greater weight to the diagnoses of the certified readers. Elkins, supra. The finding that Gibson does not have pneumoconiosis is supported by substantial evidence.
 
 Social Security Disability Benefits
 
 13
 In 1974, Gibson filed his claim for disability insurance benefits, alleging that in 1972 he became disabled due to a lung condition. Different doctors offered varying diagnoses of Gibson's condition. While some diagnoses would have supported a finding of disability, others support a finding of no disability. Pulmonary function studies done in 1973 produced no evidence of lung problems, and the x-ray readings of the certified 'A' and 'B' readers were likewise negative. This evidence is sufficient to support the ALJ's finding of no disability.
 
 
 14
 The ALJ did find that Gibson was disabled due to a car accident in 1978. He also found, though, that Gibson met the earnings requirement of the Social Security Act only through the end of 1977 and that he had only nineteen of the twenty quarters of coverage required to satisfy the disability insured status requirement of section 223 of the Act, 42 U.S.C. Sec. 423(c)(1)(3).
 
 
 15
 To qualify for disability insurance benefits, Gibson must establish that his disability began before his insured status expired. See LeMaster v. Weinberger, 533 F.2d 337 (6th Cir. 1976). Because the ALJ found no disability beginning before the end of 1977, Gibson did not qualify. Gibson did qualify for supplemental security income benefits, though, which the ALJ properly awarded.
 
 
 16
 The judgment of the District Court is affirmed.
 
 
 
 *
 Honorable Carl B. Rubin, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Gibson claims in his brief (p. 4) that Dr. W. F. Clarke, purportedly an 'A' reader, did diagnose pneumoconiosis. The record, however, contains no such diagnosis